HUDDLESTON *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-WAY COMPANY.

Opinion delivered December 21, 1908.

INSTRUCTIONS—RELEVANCY TO EVIDENCE.—It is error to submit a question to the jury upon which there was no evidence.

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

*Huddleston & Taylor,* and *Johnson & Burr,* for appellant.

1. The acts of negligence charged in the complaint are, the failure to give the statutory signals of the trains approach, and running the train at an excessively high rate of speed over the highway and through the town. (1) Failure to give the signals required by statute, under Kirby's Digest, § 6595, was actionable negligence. 76 Ark. 227; 80 Ark. 19; 69 Ark. 134; 53 Ark. 201; 78 Ark. 251. (2) Running the train at excessive speed through the town without keeping a lookout was negligence. 197 Mo. 15; 93 S. W. 1120; 76 Ark. 100. (3) Proof of the killing by the operation of the train made a *prima facie* case of

negligence against the railway company. 80 Ark. 19; 73 Ark. 548; 70 Ark. 481. (4) Deceased being, at the time he was killed, on the highway, he was no trespasser, and the company owed him the duty to employ reasonable means and exercise reasonable care to avoid injuring him. 74 Ark. 610; 63 Ark. 636.

2. Under the circumstances shown in evidence, and considering the youth, etc., of deceased, he was not guilty of contributory negligence. 29 Cyc. 535 and cases cited; 7 S. E. 912; 81 Ark. 187; 72 Ark. 117; 37 Ark. 261; 59 Ark. 215; 32 Am. Rep. 413; 34 S. E. 75; 41 So. 146; 3 So. 555; 3 Atl. 871; 43 La. Ann. 43; 88 Mo. 293; 58 N. J. L. 682; 82 Ill. 198; 5 Dill. (U. S.), 96; 88 Ill. 441; 28 Ind. 287; 25 Kan. 738; 47 La. Ann. 1218; 45 Mo. 70; 47 N. Y. 317; 114 N. C. 699; 74 Pa. St. 421.

3. The jury having found all the issues in favor of appellant, the strongest probative force of which the evidence is susceptible must be given to it in support of that verdict. 76 Ark. 115; 67 Ark. 399; 74 Ark. 478; Id. 16; 82 Ark. 214.

T. M. Mehaffy, for appellee.

McCULLOCH, J. Appellant, as administrator of the estate of Willie Welch, deceased, instituted this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damage alleged to have been sustained by the next of kin on account of the death of said decedent, which is alleged to have been caused by the negligence of servants of the railway company in the operation of its train. A trial before jury resulted in a verdict in favor of appellant for damages, and the company filed its motion for new trial, which was granted by the court. Appellant took an appeal to this court from the order granting a new trial, giving notice as required by statute, containing an assent on his part that if the order be affirmed judgment absolute shall be rendered against him.

Willie Welch, appellant's intestate, a boy thirteen years of age, was struck and instantly killed by a southbound passenger train at Peach Orchard, a village of about 200 inhabitants in Clay County, Arkansas. It occurred at night. The railroad track at that place runs about due north and south, and is perfectly straight for several miles. There is a switch track or passing track running parallel with the main track on the east side for

a distance of about one-half of a mile, and at the point where the accident occurred there is a space of eight feet between the two tracks. A public highway intersects both tracks at right angle about twenty yards north of the station, and it was at this point that deceased was struck by the train as he crossed the main track. The village lies on both sides of the track, and the highway just connects the two sections of the town, being the principal crossing place for the public.

The following succinct statement of facts, which the jury were warranted by the testimony to find, is taken from appellant's brief: "On the night of the accident a northbound freight train pulled very slowly over the passing track past the depot. As it ran slowly along, Morris Welch, a young man, climbed upon one of the box cars; then Roy Baker, a sixteen-year old boy, got upon the train; Willie Welch then got upon the second or third car from the caboose, and Howard Baker, a thirteen-year old boy, stepped upon the rear platform of the caboose. The freight train practically came to a stop when the caboose cleared the highway. Thereupon Morris Welch jumped to the ground, and ran across to the west side of the main track; Roy Baker followed Morris Welch across the main track; Howard Baker then ran across the main track after his brother; and Willie Welch, following close behind Howard Baker, crossed the main track on the highway, and just as he reached the west end of the ties of the main track west of the west rail, and while on the north end of the crossing planks in the highway, he was struck across his shoulders by the projecting end of the pilot beam of the engine pulling the passenger train, and instantly killed. Howard Baker was about three feet west of deceased when he was struck. The passenger train was twelve minutes late, and was running sixty to sixty-five miles an hour, which was much faster than usual. Its regular schedule was about fifty miles an hour through Peach Orchard. It neither sounded the whistle nor rang the bell as it approached the crossing, neither did it give any warning of its excessively high rate of speed."

To this should be added the further undisputed facts that the passenger train was a fast through train not scheduled to stop at Peach Orchard; that the engine was equipped with an electric headlight, which burned steadily and could be seen as far

as Knobel, the next station northward; that the whistle of the engine was sounded just as the boy was struck, and that the passenger train was in sight when the boys boarded the freight train. There was nothing to obstruct the view of the approaching passenger train, and Willie Welch was seen to run across the track so close in front of the engine that he passed under the headlight. He was a bright, intelligent boy, and could see and hear well.

The court gave the following instruction, the part of italics being over the objection of appellee:

"No. 5. The plaintiff says that the deceased had the right to be upon the track at the time of his injury; although he may have been at one time a trespasser, he had ceased to be such and had become a licensee. *If so, the defendant owed to the deceased the obligation to look out for him from the time he ceased to be a trespasser and became a licensee; and, in determining whether or not the defendant was guilty of any act of negligence proximately contributing to the death of the deceased, you are to find from the evidence whether or not the defendant was guilty of any act of omission after deceased ceased to be a trespasser which proximately contributed to the injury;* and unless you do find from the evidence that the defendant was negligent in this respect, then there can be no recovery here, unless you further find that defendant's servants were aware of the deceased's presence and danger in time to have averted the accident after such discovery."

This instruction was erroneous, as there was no evidence to warrant it. There was not a particle of evidence that appellee's servants were guilty of any negligent act or omission after deceased started to go upon the track, which contributed in any degree to the injury. On the contrary, it is certain that, after deceased started to go upon and across the track, it was too late for the employees in charge of the engine to do anything to avoid the injury. He was only eight feet from the main track when he alighted from the freight train and started to run across the track. The train was then coming at a rapid speed, and was so close to him that nothing could have been done during the short space of time to avert the disaster unless he stayed off the track. No warning that might have been given by bell or whistle at that time could possibly have added to his knowledge of the immediate approach of the train, for the undisputed evidence is

that the engine was so close to him that in crossing the track he passed beneath the rays from the headlight.

It was erroneous and prejudicial to submit a question to the jury upon which there was no evidence. *St. Louis, I. M. & S. Ry. Co.* v. *Denty,* 63 Ark. 177; *St. Louis, I. M. & S. Ry. Co.* v. *Woodward,* 70 Ark. 441; *Fordyce* v. *Key.* 74 Ark. 19; *Pratt* v. *Metzger,* 78 Ark. 177; *Harris Lumber Co.* v. *Morris,* 80 Ark. 260.

It is unnecessary to determine whether there was any negligence at any time on the part of appellee's servants which contributed to the injury of appellant's intestate, as, on account of the giving of the erroneous instruction mentioned above, the court was correct in granting a new trial, and his order must be affirmed.

In accordance with the terms of the statute, judgment absolute will be rendered against appellant.